UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

DAVID GLEESE,

    Plaintiff,

v.                                        Case No. 2:04-cv-122
                                            HON. DAVID W. MCKEAGUE

BARBARA BOUCHARD, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff prisoner David Gleese, a/k/a Xavier-X, filed this civil rights action under 42 U.S.C. § 1983 for alleged constitutional violations which occurred at the Alger Maximum Correctional Facility against defendants Deputy Warden Bergh, ADW Ron Bobo, Acting ADW Dennis Gramm and Inspector Rutter. Plaintiff alleges that defendants retaliated against him and discriminated against him by keeping him in administrative segregation and on one occasion searched his cell to find security threat group (STG) material.

On December 8, 1999, plaintiff received a notice of intent (NOI) because he had sent out letters to prisoners identifying himself as the spiritual advisor of the Melanics. On December 13, 1999, the NOI was dismissed by the hearing officer because the Melanics were a recognized religious group and the fact that plaintiff was a leader in a recognized religious group could not create a disturbance at the prison. On December 29, 1999, plaintiff received another NOI because he was alleged to be involved in planning and carrying out a disturbance at the prison. On January 4, 2000, the NOI was upheld and plaintiff was transferred to Alger Maximum Correctional Facility. Plaintiff was later informed by defendant Rutter that the Melanics were no longer a recognized

religious group and that plaintiff could sign a renunciation slip or be classified as a STG member. Plaintiff signed the slip. Plaintiff was then placed in administrative segregation on April 16, 2001, allegedly because he was involved in a disturbance at his prior prison on December 13, 1999. Plaintiff asserts that he was officially segregated for being involved in a disturbance on December 4, 1999, without any evidence or formal charges.

On July 31, 2001, inspector Rutter wrote a NOI asserting that plaintiff was involved in a disturbance where a large group of prisoners attacked and injured prison staff. The NOI was upheld. During the month of May 2003, sergeant Murray and Resident Unit Officer Vandyke searched plaintiff's cell for STG materials. Sergeant Murray informed plaintiff that if they found no STG material plaintiff would be taken off STG status. Plaintiff stated that he was not on STG status. Sergeant Murray allegedly checked and then informed plaintiff that he was correct that plaintiff was not on STG status. No STG materials were found. Plaintiff sent kites regarding his alleged STG status. Plaintiff received a response from inspector Rutter stating that plaintiff was not on STG status.

Plaintiff alleges that he has been confined in administrative segregation much longer than prisoners who were found guilty of very serious misconduct charges, as opposed to simply a NOI. During August of 2003, plaintiff was required to submit to a shakedown where only legal papers were confiscated. On August 6, 2003, inspector Rutter informed plaintiff that plaintiff would be placed on STG status. Plaintiff complains that the materials used by defendants to place him on STG status were documents that plaintiff was using to support a pending lawsuit in which plaintiff is a class member. On September 9, 2003, plaintiff was given STG II status. Plaintiff complains that STG II status will keep plaintiff in a level 5 prison and prevent him from being employed if released to general population.

Defendants filed a motion for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). While the evidence must be viewed in the light most favorable to the nonmoving party, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v. Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

Defendants argue that plaintiff's claims are barred by the doctrine of res judicata because plaintiff has already unsuccessfully presented these claims in this court. On October 25, 2002, plaintiff's complaint in *Gleese v. McDonald,* 2:02-cv-138 (W.D. Mich. Oct. 25, 2002), was dismissed for failure to state a claim upon which relief may be granted. Plaintiff again made claims regarding his placement in administrative segregation in *Gleese v. McDonald*, 2:03-cv-212 (W.D. Mich. Aug. 31, 2004). The court dismissed that case as barred by res judicata.

The doctrine of claim preclusion, sometimes referred to as res judicata, provides that if an action results in a judgment on the merits, that judgment operates as an absolute bar to any subsequent action on the same cause between the same parties or their privies, with respect to every matter that was actually litigated in the first case, as well as every ground of recovery that might have been presented. *Black v. Ryder/P.I.E. Nationwide, Inc.*, 15 F.3d 573, 582 (6th Cir. 1994); see *Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 467 n.6 (1982); *see also Bowen v. Gundy*, No. 96-2327, 1997 WL 778505, at * 1 (6th Cir. Dec. 8, 1997). Claim preclusion operates to relieve parties of the cost and vexation of multiple lawsuits, conserve judicial resources, and by preventing inconsistent decisions, encourage reliance on adjudication. *Allen v. McCurry*, 449 U.S. 90, 94 ( 1980). In order to apply the doctrine of claim preclusion, the court must find that (1) the previous lawsuit ended in a final judgment on the merits; (2) the previous lawsuit was between the same parties or their privies; and (3) the previous lawsuit involved the same claim or cause of action as the present case. *Allen,* 449 U.S. at 94; *accord Federated Dept Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981).

In this case plaintiff is not complaining about his initial placement in administrative segregation, but complains that he should have now been released to the general population. Further, plaintiff is suing different defendants. Claim preclusion is not appropriate in this case.

Plaintiff has argued that his equal protection rights were violated by defendants because other prisoners with serious misconduct violations have been released from administrative segregation earlier than plaintiff. Plaintiff maintains that he did not commit a serious misconduct violation, but merely received a NOI to classify to administrative segregation. The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike. U.S. CONST., amend. XIV; *City of Cleburne v. Cleburne*

*Living Center, Inc.*, 473 U.S. 432, 439 (1985). A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals. *Massachusetts Board of Retirement v. Murgia*, 427 U.S. 307, 312 (1976). Because a fundamental right is not implicated in this case and plaintiff does not allege that he is a member of a suspect class, he is not entitled to strict scrutiny. Instead, the decision to deny Plaintiff CRP placement need only be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434, 446 (1973) ; *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).

To prove his equal protection claim, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000). Plaintiff alleges that he was intentionally treated differently than other prisoners with similar or worse histories of assaultive or violent behavior.

Plaintiff was initially confined in prison on three life sentences for armed robbery. In 1995, plaintiff was involved in an incident at the Brooks facility which injured eight corrections officers. Plaintiff pleaded guilty to assaulting a corrections employee and received an additional sentence of 4-15 years. Plaintiff was transferred to Ionia Maximum Facility, the only level VI prison at the time. Plaintiff was believed to be involved in planning an incident at Chippewa Correctional Facility which resulted in injuries to several corrections officers. Defendant Gramm states that plaintiff's behavior while confined in administrative segregation has nothing to do with his present confinement in administrative segregation. Plaintiff has behaved in administrative segregation, but is unable to behave in general population. Administrative segregation has proven to be an appropriate security level for plaintiff. Defendant Gramm doubts that plaintiff could be successful

in a less restrictive environment. Defendant Gramm has asserted that when given the opportunity, plaintiff will try to kill staff. Defendant Gramm believes that plaintiff does not understand the seriousness of assaulting and injuring a staff member or causing a disturbance within the prison. Defendant Gramm states that he could not in good conscience release plaintiff to general population because he believes that plaintiff would attempt to assault a staff member. Due to the seriousness of plaintiff's behavior, his release into general population requires written approval from the CFA Regional Prison Administrator. Clearly, there exists a rationale basis for keeping plaintiff in administrative segregation.

Plaintiff complains that defendants have retaliated against him. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 *1037 (6th Cir.1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, in least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, Plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)). Similarly, plaintiff cannot support a claim of retaliation against defendants. Plaintiff's placement in administrative segregation was based on his history of causing disruptions that lead to injuries to corrections officers. Further, plaintiff has no right not to have his cell searched.

Plaintiff complains that the search of his cell violated his Fourth Amendment rights. In *Hudson v. Palmer*, 468 U.S. 517, 522-526, 528 n 8 (1984), the Supreme Court held that prisoners have no reasonable expectation of privacy in their cells, and upheld unannounced cell searches.

Further, in *Hudson*, the United States Supreme Court noted that the same reasons which led it to conclude that the Fourth Amendment did not prohibit searches of a prisoner's cell, applied with equal force to seizures. *Id.* at 528 n 8. The Court stated that "[p]rison officials must be free to seize from cells any articles which, in their view, disserve legitimate institutional interests." *Id.* The Supreme further stated that although the Fourth Amendment does not protect against seizures in a prison cell, an inmate's property cannot be destroyed with impunity, noting that the respondent in *Hudson* had adequate state remedies even apart from inmate grievance procedures. Therefore, plaintiff's claim that his Fourth Amendment right to be free from unreasonable searches and seizures was violated should be dismissed.

Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987).

"The procedure for evaluating claims of qualified immunity is tripartite: First, we determine whether a constitutional violation occurred; second, we determine whether the right that was violated was a clearly established right of which a reasonable person would have known; finally, we determine whether the plaintiff has alleged sufficient facts, and supported the allegations

- 7 -

by sufficient evidence, to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Williams v. Mehra*, 186 F.3d 685, 690 (6th Cir. 1999).

When determining whether a right is clearly established, this court must look first to decisions of the United States Supreme Court, then to decisions of the Sixth Circuit and to other courts within this Circuit, and finally to decisions of other circuits. *Dietrich*, 167 F.3d at 1012. An official action is not necessarily protected by qualified immunity merely because the very action in question has not previously been held to be unlawful. Rather, in light of pre-existing law, the unlawfulness of the official's conduct must be apparent. *Dietrich*, 167 F.3d at 1012; *Wegener v. City of Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

When making a qualified immunity analysis, the facts must be interpreted in the light most favorable to the plaintiff. Part of the analysis is to determine whether there are any genuinely disputed questions of material fact. *Kain v. Nesbitt*, 156 F.3d 669, 672 (6th Cir. 1998). Where there is a genuinely disputed question of fact, it is for the trier of fact to resolve, not the judge. "This would be true notwithstanding that the trial judge found the [defendant] officer to be more credible than the plaintiff because it is not for the court to make credibility determinations at this stage of the proceeding." *Id.*

The operation of the qualified immunity standard depends substantially upon the level of generality at which the relevant legal rule is to be identified.

> The contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in light of the preexisting law the unlawfulness must be apparent.

*Anderson*, 483 U.S. at 639-40.  *See also Durham v. Nu'Man*, 97 F.3d 862, 866 (6th Cir. 1996), *cert. denied*, 520 U.S. 1157 (1997).

> The Sixth Circuit has observed:
>
> A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred.

*Durham*, 97 F.3d at 866 (citing *Robinson v. Bibb*, 840 F.2d 349, 351 (6th Cir. 1988)).

Thus, qualified immunity is not triggered only where the very action in question was previously held unlawful.  *Anderson*, 483 U.S. at 639-40.  Rather, the test is whether the contours of the right were sufficiently clear that a reasonable official would understand that what he is doing violated plaintiff's federal rights.  *Id.*

Furthermore, a defendant need not actively participate in unlawful conduct in order to be liable under Section 1983.  Rather, a defendant may be liable where he has a duty to protect a plaintiff and fails to comply with this duty.  *Durham*, 97 F.3d at 866-868 (holding that a nurse and a security guard at a state hospital may be liable under Section 1983 where they do not take action to prevent a patient from being beaten).  *See also McHenry v. Chadwick*, 896 F.2d 184 (6th Cir. 1990)(a correctional officer who observes an unlawful beating may be liable under Section 1983 even though he did not actively participate in the beating), and *Bruner v. Dunaway*, 684 F.2d 422 (6th Cir. 1982), *cert. denied sub nom*, *Bates v. Bruner*, 459 U.S. 1171 (1983)(police officers who stood by and observed an unlawful beating by fellow officers could be held liable under Section 1983).

When faced with a qualified immunity defense, the court must first determine whether or not the plaintiff has stated a claim upon which relief can be granted.  *Siegert v. Gilley*, 500 U.S.

226, 232 (1991); *Turner*, 119 F.3d at 429. If the court answers that question in the affirmative, the court goes on to determine whether or not the right allegedly violated was clearly established. *Turner*, 119 F.3d at 429. These are both purely legal questions. The immunity issue should not be resolved if there are factual disputes on which the issue of immunity turns such that it cannot be determined before trial whether the defendants' conduct violated clearly established rights. *Hall v. Shipley*, 932 F.2d 1147, 1154 (6th Cir. 1991). In the opinion of the undersigned, defendants are entitled to qualified immunity because defendants did not violate plaintiff's rights.

Accordingly, it is recommended that defendants' motion for summary judgment (docket #12) be granted, dismissing this case in its entirety, and plaintiff's motion for summary judgment (docket #21) be denied.

Further, if the court adopts this recommendation the court should decide that an appeal of this action would not be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons that the court grants defendants' motion for summary judgment, the court can discern no good-faith basis for an appeal. It is recommended that should the plaintiff appeal this decision, the court assess the $255 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610-11, unless plaintiff is barred from proceeding *in forma pauperis*, e.g., by the "three-strikes" rule of § 1915(g). If he is barred, he should be required to pay the $255 appellate filing fee in one lump sum.

NOTICE TO PARTIES: Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within ten days of your receipt of this Report and Recommendation. 28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR. 72.3(b). Failure to file timely objections constitutes a waiver of any further right to appeal of those issues or claims addressed or resolved as a result of the Report and Recommendation.

*United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

        /s/ Timothy P. Greeley
TIMOTHY P. GREELEY
UNITED STATES MAGISTRATE JUDGE

Dated:   June 16, 2005